IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ENRIQUE GOMEZ-RODRIGUEZ,**

       **Petitioner,**

   v.                                          **CIVIL ACTION NO. 2:14-cv-19**
                                                             **(Judge Bailey)**

**WARDEN RUSSELL A. PERDUE,**

       **Respondents.**

## REPORT AND RECOMMENDATION

### I. Background

On March 10, 2014, the *pro se* petitioner, Enrique Gomez-Rodriguez ("Petitioner"), an inmate at FCI Gilmer, filed a petition for habeas corpus pursuant to 28 U.S.C. §2241, apparently challenging a detainer which has been lodged against him by the Immigration and Customs Enforcement ("ICE) which prevents him being placed in a Residential Reentry Center. The same day, the petitioner was sent a notice of deficient pleadings. The petitioner paid the required $5.00 filing fee on March 31, 2014 and his court approved form on April 1, 2014. On April 2, 2014, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an order to show cause was issued against the respondent. On April 23, 2014, the respondent filed a response and a motion to dismiss along with an accompanying memorandum of law. After a Roseboro Notice was sent and an extension of time to file was granted, the petitioner filed a reply on July 3, 2014. The matter is now before the undersigned for an initial report and recommendation.

## II. Facts[1]

On August 12, 2008, in the United States District Court for the Southern District of Texas, the petitioner was indicted in counts one, three, four, and five of a five count indictment for possession with intent to distribute and conspiracy to distribute quantities of cocaine. (Dkt. No. 37 at 1-3). On March 2, 2009, the petitioner entered into a plea agreement under which he agreed to plead guilty to count three of the indictment: knowingly and intentionally possessing with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), in return for several nonbinding recommendations by the government. (Dkt. No. 94 at 1). At his sentencing hearing on December 31, 2009, the court sentenced the petitioner to 90 months incarceration followed by three years of supervised release. (Dkt. No. 157 at 2-3). The court dismissed counts one, four, and five against the petitioner. (Id. at 1).

On August 13, 2010, the petitioner appealed his judgment and sentence to the United States Court of Appeals for the 5th Circuit. (Dkt. No. 161). The 5th Circuit dismissed the petitioner's appeal as untimely, because it was filed more than seven months after the petitioner's judgment and sentence had become final. (Dkt. No. 170 at 1). The petitioner then began requesting documents to prepare a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody, (Dkt. No. 171 and 172). However, it does not appear that the petitioner ever submitted or completed said petition.

Although not clear on what date it occurred, there is no disagreement that a detainer was lodged against the petitioner by the United States Immigration and Customs Enforcement Office

---

[1] Unless otherwise noted, all docket number references are in relation too criminal case number 7:08-cr-886-3 in the United States District Court for the Southern District of Texas.

("ICE") for deportation charges. (Dkt. No. 16-1 at 1[2]).According to the Bureau of Prisons' website, the petitioner's projected release date is December 22, 2014.

### III. Arguments Presented

**A. Petitioner's Petition**

In his original filing and subsequent court approved form, the petitioner claims the following:

1. The ICE detainer prevents him from being placed in a halfway house;

2. He should be given immigration bail/ parole so that he can more effectively research and work on his immigration issues;

3. There has been a change in the Office of Homeland Security's policy that gives him the right to re-open his hearing in regards to immigration bail/ parole; and

4. He is an over-the-road truck driver, and the detainer denies him the right to work and provide for his family which violates the core meaning of the RICO Act and N.A.F.T.A.

**B. Respondent's Response**

In the response to the petitioner's claims, the respondent argues the following:

1. The petitioner is not eligible to be released to a halfway house or lower custody because the BOP program statements prevent such a move when an prisoner has a detainer lodged against him;

2. The petitioner's rights are not being violated because he has no protected interest in being transferred to a halfway house or lower custody, (Id. at 2-3);

3. The petitioner is not eligible to challenge anything under 28 U.S.C. §2241 because he has not exhausted his administrative remedies.

**C. Petitioner's Reply**

In his reply the petitioner claims the following:

1. Respondent failed to argue Petitioner's claims that his INS/ICE proceedings violated RICCO and NAFTA and thus his petitioner for immigration bail/parole must be granted;

---

[2] **Docket number is in reference to civil case number 2:14-cv-19 in the United States District Court for the Northern District of West Virginia.**

2. his deportation and being barred from crossing the border would violate NAFTA and RICCO laws, since he is an "on the road trucker" and may be required to take cargo across the border to Canada;

3. there are material facts that are disputed, and thus dismissal or summary judgment are not warranted.

## IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); *see also Martin,* 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief

above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary

judgment. <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.,</u> 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,</u> 475 U.S. 574, 587-88 1986).

## V. Analysis

**A. Failure to Exhaust Administrative Remedies**

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. *See, e.g.*, <u>Martinez v. Roberts</u>, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3rd Cir. 1996) (same); <u>McCallister v. Haynes</u>, 2004 WL 3189469 (N.D.W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a court has the discretion to waive that requirement in certain circumstances. *See* <u>LaRue v. Adams</u>, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (citing <u>Smith v. Angelone</u>, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. *See* <u>id.</u> at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, courts have enforced a longstanding policy favoring exhaustion. *See* Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

In the case at hand, the petitioner has clearly not exhausted his administrative remedies. In fact, the petitioner has not even attempted to use his administrative remedies as established by the Bureau of Prisons. The petitioner claims that he has filed complaints with Immigration and Naturalization Services ("INS") but they have not responded, and that this constitutes exhaustion of his administrative remedies. (Dkt. No. 1 at 2). These challenges are only in regards to his deportation and inability to later cross the border, and have nothing to do with FCI Gilmer or the BOP's refusal to allow the petitioner to serve the remainder of his sentence in a halfway house. Therefore, this petition should be dismissed for failure to exhaust.

**B. Release to Halfway House or Home Confinement**

The petitioner is arguing that he should be released from FCI Gilmer to serve the remainder of his sentence in a halfway house or on home confinement because this would give him a better opportunity to prepare for and challenge his upcoming immigration issues and

eventual deportation. (Id. at 4). While it is true that under 18 U.S.C. § 3624(c) the BOP may place the prisoner in a halfway house or in lower custody for a certain portion of their sentence, this is entirely at the discretion of the BOP. *See* 18 U.S.C. § 3624(c)(4)(linking 18 U.S.C. § 3624 to the BOP's authority to designate place of confinement in 18 U.S. Code § 3621). Further, the BOP has set out the factors and requirements it uses to make the determination of whether to release a prisoner to a halfway house or lower confinement in Program Statement 7310.04. In this statement, the BOP specifically set out that "inmates with unresolved pending charges, or detainers . . ." are not eligible to serve the portion of their sentence in a halfway house or lower confinement. See Program Statement 7310.04, Section 10(f)(which can be found at Dkt. No. 16-3 at 11-12). In this case, the petitioner has an ICE detainer lodged against him. (Dkt. No. 16-1 at 1). Thus, he would be ineligible to be released into lower custody even if he had exhausted his administrative remedies.

Moreover, a prisoner has no protected interest in the place he will serve his confinement. 18 U.S. Code § 3621 gives the BOP the authority to determine where a prisoner will serve his time, and 18 U.S.C. § 3624, which provides for transfer to a halfway house or lower custody for a portion of a sentence, specifically notes that nothing in this section shall interfere with the BOP's authority in 18 U.S. Code § 3621. *See* 18 U.S.C. § 3624(c)(4). Therefore, because the petitioner cannot show he has a protected interest in being transferred to a halfway house or lower custody, and the BOP has the authority to determine where he will serve his sentence, keeping the petitioner in prison until his release date is not a violation of his Constitutional rights.

**C. Ripeness**

The Supreme Court has recognized that "[t]he ripeness doctrine is 'drawn both from Article III limitation on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (20003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Metzenbaum v. fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289-1290 (1982) (citations omitted).

The ICE detainer issued to the petitioner notified him that an investigation had been commenced to determine whether he was removable from the United States. An ICE detainer specifically advises prison officials that it is issued solely for notification purposes and does not "limit your discretion in any decision affecting the offender's classification, work, and quarter assignments, or other treatment which he or she would otherwise receive." The detainer additionally requests only that prison officials provide ICE with advance notice of the petitioner's release so that they can assume custody of the petitioner.

The petitioner's present federal incarceration is not the result of the ICE detainer. Under 8 C.F.R. § 239.1(a), removal proceedings do not commence upon the filing of a detainer at the prison where the alien is incarcerated, but rather with the filing of a notice to appear before an Immigration Judge. The presence of an ICE detainer also does not affect the petitioner's status as a sentenced federal offender. Rather, "it merely notifies prison officials that a decision regarding his deportation will be made...at some future date. Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988).

A federal court may issue a writ of habeas corpus under § 2241 only if the petitioner is "in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §

22441(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). Of the courts to consider whether an ICE detainer satisfies the "in custody" requirement of § 2241, the Courts have held that an ICE detainer, without more, does not satisfy that requirement. See Hamilton v. Bureau of Immigration and Custom Enforcement, 2008 WL 2512644 *2, 1:08cv1174-TWT (N.D.Ga. June 19, 2008( (collecting cases).

Accordingly, since the mere filing of a detainer does not satisfy the "in custody" requirement, and there is no dispute that the petitioner is currently serving his federal criminal sentence and is not in actual ICE custody, his present § 2241 action is not ripe for adjudication with respect to his claims regarding deportation

## VI.  Recommendation

For the foregoing reasons, it is the recommendation of the undersigned that the respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. No. 15) be **GRANTED** and the petition be **DISMISSED WITH PREJUDICE.**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985):  Wright v. Collins, 766 F.2d 841 (4th Cir. 1985):  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the pro se petitioner by certified mail, return receipt requested, to his last known address as

shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATE: August 13, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE